IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VAUGHAN T. WILLIAMS, )
         Plaintiff, )
)
vs ) Civil Action No. 07-02
)
JOHN E. POTTER, Postmaster General, )
United States Postal Service, )
         Defendant. )

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion for summary judgment (Document No. 19) be granted.

II. Report:

Presently before the Court is a motion for summary judgment submitted by the defendant, John E. Potter, Postmaster General of the United States Postal Service. For reasons discussed below, the defendant's motion for summary judgment should be granted.

The plaintiff, Vaughan T. Williams, proceeding pro se, commenced this action alleging that the Postal Service terminated his employment as a Part-Time Flex Carrier on the basis of his race, color and age. Specifically, it is alleged in the complaint that the plaintiff is a 54 year old, African American black male; that on April 16, 2005, he was hired by the Postal Service as a Part-Time Flex Carrier, and he began work at the Wood Runs Annex in Pittsburgh, PA; that because of his age, race and color, he was not given the necessary training to succeed on the job; and that on June 8, 2005, his employment was unlawfully terminated due to his age, and for being a black, African American male.[1]

---

1. Subsequent to the termination of his employment as a Part-Time Flex Carrier, the plaintiff was employed by the Postal Service as a Sales Associate Distribution Clerk in Hookstown, PA, where he currently works.

The plaintiff's claim of race discrimination arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and his claim of age discrimination is actionable under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., as amended ("ADEA"). The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1339.

Following discovery, the defendant moved for summary judgment on the plaintiff's claims. Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004).

In support of summary judgment, the defendant argues that the plaintiff's claim that he was not given the necessary training to succeed on the job must be dismissed, as the plaintiff failed to exhaust his administrative remedies on the claim. We agree.

It is well settled that an aggrieved federal employee must first seek relief in the agency that has allegedly discriminated against him. Brown v. General Services Administration, 425 U.S. 820, 832 (1976). In Love v. Pullman, 404 U.S. 522, 523 (1972), the Supreme Court stated that one "claiming to be aggrieved by a violation of Title VII... may not maintain a suit for redress in federal court until he has first unsuccessfully pursued certain avenues of potential administrative relief." Indeed, "a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997), citing McKart v. United States, 395 U.S. 185, 193 (1969).

Prior to initiating this action, the plaintiff submitted one Equal Employment Opportunity ("EEO") complaint to the Postal Service for its review. In an attachment to his EEO complaint, the plaintiff described the alleged discrimination to which he was subjected in pertinent part as follows: "On June 8, 2005, Mr. Williams, a 54 year old African American Male was terminated from Woods Run Annex by Ms. Alt, Office Manager, for supposedly not making progress in the performance of his duties." Nowhere in his EEO complaint, however, did the

plaintiff claim that he received insufficient training.[2]

In a letter to the plaintiff dated July 27, 2005, the Postal Service informed him it had accepted his EEO complaint for investigation, and that the scope of the investigation would include the following specific issues: "The complainant alleged discrimination based on race (African-American), color (Black), and age (DOB: 05/26/1951) when: effective June 8, 2005, he was terminated from the U.S. Postal Service during his probationary period."[3] Since the plaintiff never raised the issue of insufficient training in his EEO complaint, the Postal Service never investigated it. Hence, that claim should be dismissed for failure to exhaust administrative remedies.[4]

With respect to the plaintiff's claims that he was terminated from his Part-Time Flex Carrier job due to his race, color and age, the defendant insists that the plaintiff cannot prove he was terminated for discriminatory reasons. According to the defendant, the plaintiff's employment was terminated because during his probationary period, he failed to progress in the performance of his duties, particularly with respect to the amount of time he was taking to deliver the mail and complete his tasks.

In cases alleging employment discrimination, a plaintiff can establish his claims either by the presentation of direct evidence of discrimination, or from indirect evidence which creates an inference of unlawful discrimination. Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 n.4 (3d Cir. 1999). A plaintiff attempting to establish direct evidence of discrimination

---

2. See, defendant's statement of material facts at ¶¶ 7-8 and Exhibit B to defendant's appendix of exhibits.

3. See, defendant's statement of material facts at ¶ 9.

4. The plaintiff did exhaust administrative remedies on his claims that he was terminated from his Part-Time Flex Carrier job because of his race, color and age. As to those claims, an administrative judge for the Equal Employment Opportunity Commission issued a decision without a hearing dated September 28, 2006 based on the record (pursuant to 29 CFR § 1614.109 (1999)), finding that the plaintiff failed to prove that his termination was based on his race, color and age. See, Exhibit III to plaintiff's appendix of exhibits.

"faces a high hurdle". Connors v. Chrysler Financial Corp., 160 F.3d 971, 976 (3d Cir. 1998). "[T]he direct evidence must be so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production." Id.

Here, the plaintiff has not established direct evidence of discrimination. Thus, his Title VII and ADEA claims will be analyzed under the burden-shifting analysis articulated in McDonnell Douglas v. Green, 411 U.S. 792 (1973) and Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248 (1981) for cases involving indirect evidence.[5]

Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. See, Burdine, 450 U.S. at 252-53. In cases as here, where a plaintiff alleges disparate treatment because of his race or color, he may meet this burden by showing: (1) he was a member of a protected class; (2) he was qualified for the position which he held; (3) despite his qualifications, he was subjected to an adverse employment action; and (4) he was treated less favorably than persons outside of the protected class, thereby raising an inference of unlawful discrimination. McDonnell Douglas, 411 U.S. at 802.

A plaintiff alleging disparate treatment on the basis of age may satisfy his prima facie case by showing: (1) he was over 40 years old, and thus a member of a protected class; (2) he was qualified for the position which he held; (3) despite his qualifications, he was subjected to an adverse employment action; and (4) a younger person was treated more favorably, thereby raising an inference of unlawful discrimination. Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997).

The defendant does not dispute that the plaintiff has met the first three criteria for his prima facie cases set forth above. However, he argues that the plaintiff cannot establish the fourth element of his prima facie cases, as his termination did not occur under circumstances

---

5. We note that the three-stage shifting burden of proof originally developed for cases arising under Title VII also applies for claims brought under the ADEA. Maxfield v. Sinclair, 766 F.2d 788, 793 (3d Cir. 1985), cert. denied, 474 U.S. 1057 (1986).

4

giving rise to an inference of discrimination. Rather, the defendant avers that the plaintiff's employment was terminated because he failed to progress in the performance of his duties, as he consistently required far more time than allotted by the Postal Service to complete his tasks.

"The burden of establishing a prima facie case of disparate treatment is not onerous." Burdine, 450 U.S. at 253. A plaintiff must prove by a preponderance of the evidence that he was subjected to an adverse employment action under circumstances which give rise to an inference of unlawful discrimination. Id. A plaintiff can establish an inference of discrimination by showing he was treated differently than similarly-situated employees outside the protected class. Blue v. Defense Logistics Agency, 181 Fed. Appx. 272, 274 (3d Cir. 2006), cert. denied, 127 S.Ct. 1336 (2007).

To show that he was subjected to disparate treatment, the plaintiff asserts that the Postal Service treated him less favorably than a similar-situated employee, Chris Winning, who is outside the protected classes (Chris Winning is white, Caucasion, and 30 years of age). The plaintiff insists that Chris Winning's employment situation is nearly identical to his own, as he and Winning began their employment as Part-Time Flex Carriers at the Woods Run facility at the same time, but Winning was accorded more favorable treatment, as he was given a locker, received satisfactory reviews from Laureen Alt and was retained as an employee, whereas the plaintiff was not given a locker, received mostly unsatisfactory reviews from Ms. Alt and was terminated during his probationary period.

To show that a comparator is "similarly-situated", a plaintiff must demonstrate that all relevant aspects of their employment is nearly identical. See, Red v. Potter, 211 Fed. Appx. 82, 84 (3d Cir. 2006) (citations omitted). Similarly-situated employees are those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Jackson v. Bob Evans-Columbus, 2006 WL 3814099, *7 (W.D.Pa., 2006), quoting Ogden v. Keystone Residence, 226

F.Supp. 2d 588, 603 (M.D.Pa. 2002). Also see, Tyler v. SEPTA, 2002 WL 31965896, * 3 (E.D.Pa., Nov. 8, 2002), aff'd. without op., 85 Fed. Appx. 875 (3d Cir. 2003) (to show that a comparator is similarly-situated, a plaintiff must establish that the comparator's "acts were of comparable seriousness to his own infraction, and that the [comparator] engaged in the same conduct without such differentiating or mitigating circumstances as would distinguish the [comparator's] conduct or the employer's resulting treatment of [him]").

The defendant argues that the plaintiff and Chris Winning are not similarly-situated employees. Aside from the fact that the plaintiff and Winning had different supervisors, the defendant avers that there were substantial differences in the quality of their performance, as the plaintiff had significant work-related performance problems, while Chris Winning did not.

Before reviewing the record, we note that the defendant filed a statement of material facts and a supplemental statement of material facts in accordance with Local Rule of Court 56.1(B)(1), to which the plaintiff failed to respond in accordance with Local Rule 56.1(C)(1). Thus, under the Court's Local Rule 56.1(E), the defendant's statements of material facts are deemed admitted by the plaintiff. The Third Circuit Court of Appeals has found that "[s]uch local rules are permissible so long as district courts do not use them to bypass the merits analysis required by Federal Rule of Civil Procedure 56." Benko v. Portage Area School District, 241 Fed. Appx. 842, 843-844 (3d Cir. 2007).

The record shows as follows: effective April 16, 2005, the plaintiff was hired as a Part-Time Flex Carrier for the Postal Service working at the Woods Run facility. His job duties included casing and delivering the mail. When the plaintiff was hired as a Part-Time Flex Carrier, he understood that he was required to successfully complete a 90 day probationary period. Laureen Alt, the Manager of the Woods Run facility, informed the plaintiff, as she did other new employees, that she expected him to report for work as scheduled, to work safely and be courteous to customers, and that while he probably would not get his initial assignments done in the exact time given to him, the Postal Service expected him not to require

considerable amounts of time to complete his tasks and to show steady progress.[6]

The primary route on which the plaintiff worked during his probationary period was Route 33001. The plaintiff's duties on Route 33001 were scheduled by the Postal Service to take 5 hours. On April 28, 2005, the plaintiff took 8.44 hours to complete his 5 hour assignment on Route 33001. On April 29, 2005, the plaintiff received assistance both in the office and out on the route, where his supervisor, Ronda Lavezoli, showed him proper techniques in an effort to help him reduce his time. On April 30, 2005, the plaintiff spent the day in training. From May 2, 2005 through May 6, 2005, the plaintiff needed the following amounts of time to complete his 5 hour assignments on Route 33001: on May 2, 2005, the plaintiff required 7.84 hours; on May 3, 2005, he required 7.23 hours; on May 4, 2005, he required 8.57 hours; on May 5, 2005, he required 7.86 hours; and on May 6, 2005, he required 8.84 hours.[7]

On May 6, 2005, Laureen Alt spoke with the plaintiff about his lack of progress in performing his duties. After May 6, 2005, the plaintiff continued to require more time than the 5 hours allotted to him to complete his tasks on Route 33001. After the first 30 days of his probationary period, the plaintiff received a 30 day employee evaluation from Ms. Alt. The 30 day employee evaluation required the evaluator to rate the employee as either Outstanding, Satisfactory, Unacceptable, or Not Observed in each of the following categories: Work Quantity, Work Quality, Dependability, Work Relations, Work Methods, and Personal Conduct. On his 30 day employee evaluation, the plaintiff was rated "Unacceptable" in the categories of Work Quantity, Work Quality, Dependability, and Personal Conduct.[8]

After his 30 day evaluation, the plaintiff continued to require more than the allotted time to complete his duties. For instance, from June 3, 2005 through June 7, 2005, the

---

6. See, defendant's statement of material facts at ¶¶ 10-15.

7. Id. at ¶¶ 16, 21-26.

8. Id. at ¶¶ 29, 31-34, 36.

plaintiff needed the following amounts of time to complete his assignments: on June 3, 2005, the plaintiff took 7.61 hours to complete a 5.5 hour assignment; on June 4, 2005, he took 8.96 hours to complete a 6 hour assignment; on June 6, 2005, he took 8.72 hours to complete a 6 hour assignment; and on June 7, 2005, he took 7.23 hours to complete a 5 hour assignment.[9]

On June 8, 2005, Laureen Alt terminated the plaintiff's employment as a Part-Time Flex Carrier during his probationary period. The Postal Service's Employee and Labor Relations Manual provides that employees may be separated "at any time in the probationary period when it becomes apparent that the employee lacks capacity for efficient service." The plaintiff was informed both verbally and in writing that his employment was terminated because he failed to progress in the performance of his duties.[10]

In contrast to the plaintiff, Chris Winning (who the plaintiff believes was a similarly-situated employee) showed adequate improvement in his work performance during his probationary period as a Part-Time Flex Carrier.[11] To assess the performances of the plaintiff and Chris Winning during their probationary periods, Laureen Alt prepared spreadsheets on their work performances. The record shows that during the first part of Chris Winning's probationary period, the primary route on which he worked was Route 2098. The duties associated with Route 2098 were scheduled by the Postal Service to take an employee 6.5 hours to complete. On April 28, 2005, Winning completed the 6.5 hour assignment on Route 2098 in 8 hours. On April 29, 2005, Winning completed his 6.5 hour assignment on Route 2098 in 7.9 hours. On April 30, 2005, Winning was assigned to perform 2 hours of work on Route 2098 sorting the mail, after which he was assigned to perform a 6 hour assignment on a new route -- Route 2083 -- for a total

---

9. Id. at ¶¶ 37-38.

10. Id. at ¶¶ 39-45.

11. Id. at ¶ 63.

8

assignment of 8 hours; Winning completed the April 30, 2005 8 hour assignment in 8.56 hours.[12]

On May 2 and May 4, 2005, Winning was assigned to Route 2098 and continued to improve his completion times, finishing the 6.5 hour assignments in 7.55 hours and 7.05 hours respectively. On May 5 and May 6, 2005, Winning was again assigned to Route 2098, but was also assigned 30 minutes of work on an additional route; Winning completed the May 5 and May 6 7 hour assignments in 7.5 hours and 7.74 hours respectively. On May 7 and May 9, 2005, Winning almost timely completing the 6.5 hour assignments on Route 2098, as he did so in 6.53 hours and 6.63 hours respectively. In light of Chris Winning's demonstrated improvement, the Postal Service began giving him additional assignments, which he completed in a timely manner. Due to Winning's good work, Laureen Alt decided that she no longer needed to track his daily performance by spreadsheet, although she continued to review his daily performance through timekeeping records.[13]

Chris Winning received "Satisfactory" ratings in all categories on his 30 day employee evaluation, his 60 day employee evaluation and his 80 day evaluation.[14] During his probationary period, Chris Winning showed appropriate improvement in his work performance, and he quickly brought his work methods within acceptable standards.[15] In contrast to Chris Winning, the plaintiff failed to progress in the performance of his duties.[16]

Since Chris Winning did not have the work-related performance problems that plagued the plaintiff, the plaintiff has not shown that Winning was a similarly situated employee who was treated more favorably. Indeed, the Third Circuit Court of Appeals has explained: "in

---

12. See, defendant's supplemental statement of material facts at ¶¶ 70-75.

13. Id. at ¶¶ 76-81.

14. See, defendant's statement of material facts at ¶ 62.

15. See, defendant's supplemental statement of material facts at ¶ 82.

16. See, defendant's statement of material facts at ¶¶ 43 and 45.

determining whether similarly situated [non-protected] employees were treated more favorably, our 'focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action.'" Pivirotto, supra, 191 F.3d at 359, quoting Simpson v. Kay Jewelers, 142 F.3d 639, 647 (3d Cir. 1998). Where an alleged comparator does not engage in the same misconduct for which the plaintiff suffered an adverse employment action, he is not a similarly situated employee for purposes of proving an inference of discrimination. Id. Also see, Moussa v. Commonwealth of PA, 289 F.Supp.2d 639, 651 (W.D.Pa. 2003) (ruling that where a plaintiff was terminated due to the pendency of criminal charges against him, an alleged comparator who was never arrested was not a similarly situated employee).

The record shows that the Postal Service terminated the plaintiff's employment because he failed to progress in the performance of his duties.[17] Unlike the plaintiff, Chris Winning showed appropriate improvement in his work performance and quickly brought his work methods within acceptable standards[18]; thus, Chris Winning is not a valid comparator. Based on the foregoing, the plaintiff has not shown that he was treated less favorably than persons outside the protected classes so as to raise an inference of unlawful discrimination. Accordingly, he has not established a prima facie case of discrimination.

Even assuming, arguendo, that the plaintiff established his prima facie cases, his claims would fail. Under the applicable burden-shifting analysis set forth in McDonnell Douglas, once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. 411 U.S. at 802. If the defendant produces a sufficient reason for its action, the burden of persuasion shifts back to the plaintiff to demonstrate that the defendant's reason is merely a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507-08 (1993).

---

17. Id.

18. See, defendant's supplemental statement of material facts at ¶ 82.

Here, the Postal Service presented a legitimate, non-discriminatory reason for its decision to terminate the plaintiff's employment as a Part-Time Flex Carrier. Specifically, the Postal Service avers that the plaintiff failed to progress in the performance of his duties, as he was unable to complete his duties in a timely fashion.

In order for the plaintiff to satisfy his ultimate burden of persuasion, he must produce evidence that the defendant's articulated reason for terminating his employment was a pretext for discrimination. St. Mary's Honor Center, supra 509 U.S. at 507-08. The plaintiff may meet this burden by introducing evidence

> from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

To establish pretext under the first prong of the Fuentes standard, the Third Circuit Court of Appeals has stated: "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Jones v. School Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999), quoting Keller, supra, 130 F.3d at 1108. Rather, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Id. "[A] plaintiff may satisfy this standard by demonstrating, through admissible evidence, that the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'" Id.

To survive summary judgment under the second prong of the Fuentes standard, a plaintiff may show pretext by "pointing to evidence in the record which allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Jones, 198 F.3d at 413. Here, the plaintiff has failed to show that

the Postal Service's articulated reason for terminating his employment was a pretext for discrimination

Therefore, it is recommended that the defendant's motion for summary judgment (Document No. 19) be granted.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                Respectfully submitted,

                <u>s/ ROBERT C. MITCHELL</u>
                United States Magistrate Judge

Dated: January 11, 2008